**Rose Antoinette TAYLOR, Appellee,**

v.

**AMERICAN HERITAGE LIFE INSUR-
ANCE COMPANY, Appellant.**

**No. 14286.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 9, 1970.

Decided Oct. 13, 1971.

Lewis T. Booker, Richmond, Va.
(Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., on the brief), for appellant.

A. Andrew Giangreco, Alexandria, Va., for appellee.

Before BOREMAN and BUTZNER, Circuit Judges, and THOMSEN, District Judge.

BOREMAN, Circuit Judge:

Rose Antoinette Taylor, the widow of Jacob B. Taylor, instituted this action in the United States District Court for the Eastern District of Virginia against American Heritage Life Insurance Company (American Heritage) to recover, as beneficiary, the proceeds of insurance written on Mr. Taylor's life under a group insurance policy issued by American Heritage. American Heritage defended on the ground that Mr. Taylor had made material misrepresentations as to the condition of his health in his application for individual insurance coverage under the group policy. The district court did not consider the merits of this defense for the assigned reason that the policy, by its terms, was incontestable (except for nonpayment of premiums) since it was issued more than two years prior to the contest of Mrs. Taylor's claim by American Heritage. The lower court awarded Mrs. Taylor $10,045.24 (the face amount of the policy plus paid but unearned premiums), plus interest and costs. We reverse and remand for further proceedings.

Mr. Taylor was a member of the Fleet Reserve Association which held a master policy of group insurance issued by American Heritage under which eligible members of the Association could obtain life insurance. Each participating member was issued an individual certificate

setting forth the benefits accruing from his subscription, together with a statement of his rights under the policy. The total amount of the premium on the group policy to be paid by the policyholder, the Fleet Reserve Association, was deemed to be the sum of the premiums due from the individual subscribers to the plan.

To be eligible to participate in the group plan an applicant member of the Association was required to provide American Heritage with satisfactory evidence of insurability. This requirement was normally met by responding to certain questions on an application form which each applicant was required to submit. No physical examination was required, unless the answers to those questions pertaining to health on the application form suggested the desirability of such an examination.

Mr. Taylor completed and signed his application for insurance on November 28, 1965. He responded as indicated to the following questions:

"6. Are you now in good health? [x] Yes [ ] No

If not, give details below.

\* \* \* \* \* \*

"9. Have you received medical or surgical treatment or advice during the last five years? [x] Yes [ ] No If yes, give details below.

\* \* \* \* \* \*

"11. Remarks: (If additional space is needed use reverse side.)
Gengivectomy [sic] performed Oct. 1965."

American Heritage issued a certificate of insurance to Mr. Taylor, effective January 1, 1966, without requiring a physical examination.

Although Mr. Taylor listed the gingivectomy, a surgical treatment for diseased gums, as the only medical or surgical treatment he had received in the five years prior to November 28, 1965, he had been, in fact, continuously and extensively treated, both surgically and medically, for cancer of the prostate since August of 1965. On December 19, 1966, less than a year after his insurance coverage began, Mr. Taylor died at Bethesda Naval Hospital, the immediate cause of death being shown as "carcinoma prostate with metastases, peritonitis." After his death, the necessary claim forms were submitted through the Fleet Reserve Association's insurance administrator. Since the *claim* forms indicated Mr. Taylor had cancer when he submitted his application for insurance which condition was not revealed in the *application*, American Heritage denied the claim. Mrs. Taylor instituted this action in the district court on February 27, 1968.

In the lower court, American Heritage took the position that it had been the victim of a material, knowing misrepresentation by Mr. Taylor and that such misrepresentation barred Mrs. Taylor's right to recover on the policy. However, the trial judge did not consider the merits of this defense since he concluded that this defense was unavailable to American Heritage by reason of the following provision of the master policy:

"15. INCONTESTABILITY. This policy shall be incontestable after two years from its date of issue, except for non-payment of premium. No statement made by any person insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such person's lifetime, nor unless it is contained in a written instrument signed by him."

Mr. Taylor's certificate of insurance was issued on January 1, 1966. American Heritage did not contest its liability in court until it filed its answer in the instant action brought by Mrs. Taylor in February 1968. The essence of the district court's holding was that American Heritage was estopped from raising the defense of misrepresentation because it failed to take legal action to contest its liability within two years of the effective date of Mr. Taylor's insurance.

American Heritage contended that the incontestability clause did not become operative since the insured died before the insurance had been in effect for two years. In rejecting this contention the district court considered only the first sentence of the incontestability clause as set out above, and relied on the authority of Mutual Life Insurance Company of New York v. Hurni Packing Company, 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235 (1923). In *Hurni*, the life insurance policy there in question, not a part of a group plan, contained the following language:

> "Incontestability. This policy shall be incontestable, except for non-payment of premiums, provided two years shall have elapsed from its date of issue."

Although the insurer's liability was not contested in that case within the two-year period, the insured had died within two years of the policy's issue date. The insurance company contended that the incontestability clause never became operative but the Supreme Court held to the contrary:

> "In order to give the clause the meaning which the [insurance company] ascribes to it, it would be necessary to supply words which it does not at present contain. The provision plainly is that the policy shall be incontestable upon the simple condition that two years shall have elapsed from its date of issue;—not that it shall be incontestable after two years if the insured shall live, but incontestable without qualification and in any event." 263 U.S. at 177, 44 S.Ct. at 92.

*Hurni* is inapposite. That which was absent in the incontestability clause in that case is present in the second sentence of the incontestability clause at issue in the instant case. The second sentence, which was not fully considered by the court below, provides that "No statement made by any person insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which

such statement was made *after such insurance has been in force prior to the contest for a period of two years during such person's lifetime,* nor unless it is contained in a written instrument signed by him." (Emphasis added.) It is clear that this provision would bar a contest of the insurance based on Mr. Taylor's asserted misrepresentation only if he had been insured under the policy for a period of at least two years before his death. *See* Reliance Life Ins. Co. of Pittsburgh v. Everglades Discount Co., 204 F.2d 937 (5 Cir. 1953); Greenbaum v. Columbian Nat. Life Ins. Co. of Boston, 62 F.2d 56 (2 Cir. 1932); 18 Couch on Insurance 2d § 72.48 (1968).

At first glance, the absolute nature of the language in the first sentence of the incontestability clause would appear to contradict the above interpretation of the second; indeed, the first sentence would seemingly render the second meaningless. However, closer inspection and analysis of the policy provide the resolution of this apparent conflict.

The first sentence of the clause states, "This *policy* shall be incontestable after two years from its date of issue, except for non-payment of premium." (Emphasis added.) The reference is clearly and exclusively to the "policy." Here, American Heritage is not contesting the "policy," as issued to the Fleet Reserve Association, but the individual certificate of insurance issued to Jacob Taylor. Paragraph 23 *of the policy* (entitled "INDIVIDUAL CERTIFICATE") states that the certificates issued to individual subscribers "shall not constitute a part of this policy." By its terms, the first sentence of the incontestability clause does *not* refer to individual certificates of insurance.

Further, the master policy provides that, "This policy is delivered in the District of Columbia and is governed by the laws of that jurisdiction." To this end, *both* sentences of the incontestability clause substantially conform with § 35–711(2) of the District of Columbia Code of 1961, which sets forth certain

standard provisions of group life insurance policies issued within the District. § 35–711(2) provides that:

"§ 35–711. Standard provisions for policies of group life insurance.

No policy of group life insurance shall be delivered in the District unless it contains in substance the following provisions, or provisions which in the opinion of the superintendent are more favorable to the persons insured, or at least as favorable to the persons insured and more favorable to the policyholder:

\* \* \* \* \* \*

(2) A provision that the validity of the policy shall not be contested, except for nonpayment of premiums, after it has been in force for two years from its date of issue; and that no statement made by any person insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such person's lifetime nor unless it is contained in a written instrument signed by him."

Thus the District of Columbia Code specifically calls for the substantial inclusion of both the first and second sentences of the incontestability clause with respect to *group* life insurance policies.

By way of contrast, § 35–703(3) of the District of Columbia Code, dealing with *regular* life insurance policies does *not* require the inclusion of absolute language of the type required for group plans and contained in the first sentence of the clause in question here. § 35–703(3) provides in pertinent part:

"§ 35–703. Standard provisions required in life insurance policies.

No policy of life insurance \* \* \* shall be issued or delivered in the District or be issued by a life company organized under the laws of the District \* \* \* unless the same shall contain in substance the following:

\* \* \* \* \* \*

(3) A provision that, except as otherwise expressly provided by law, the policy \* \* \* shall be incontestable after it has been in force during the lifetime of the insured for a period of not more than two years from its date, \* \* \*; that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties; and that no such statement or statements shall be used in defense of a claim under the policy unless contained in a written application \* \* \*."

As we interpret the incontestability clause both sentences are to be given force and effect; they are not conflicting and neither is to be disregarded. Plaintiff's claim under the individual insurance certificate issued to Jacob Taylor is contested here and we hold that only the second sentence of the incontestability clause is pertinent to the certificate. It follows that the certificate was not incontestable since Mr. Taylor did not live for two years after its date of issuance.

The case is remanded to the district court to determine whether Mr. Taylor's application for individual insurance coverage contained such misrepresentations as would absolve American Heritage of liability.

Reversed and remanded.