251 N.J. Super. 480 (1991)
598 A.2d 929
NANCY SPILKER, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF JOHN SPILKER, DECEASED, PLAINTIFF-RESPONDENT,
v.
WILLIAM PENN LIFE INSURANCE COMPANY OF NEW YORK, DEFENDANT-APPELLANT, AND ABC COMPANY, DEF COMPANY, XYZ COMPANY, JOHN DOE I, JOHN DOE II AND JOHN DOE III, SAME BEING UNKNOWN, FICTITIOUS AND/OR UNIDENTIFIED RESPONSIBLE PERSONS OR ENTITIES, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1991.
Decided November 4, 1991.
*481 Before Judges ANTELL, LONG and THOMAS.
Rosalie Burrows argued the cause for appellant (McCarter & English, attorneys, Rosalie Burrows of counsel and on the brief and Penelope M. Taylor on the brief).
Arthur L. Shanker argued the cause for respondent, Arthur L. Shanker on the brief.
THOMAS, J.S.C. (temporarily assigned).
In this appeal we are called upon to review the motion judge's interpretation of life insurance incontestability established by N.J.S.A. 17B:25-4. On cross motions for summary judgment he ruled, based upon the facts of this case, the insurance company was barred from raising equitable fraud to contest the validity of the policy. We disagree and reverse.
In February 1988, John J. Spilker applied for life insurance with William Penn Life Insurance Company of New York. In response to questions about his past medical history, the insured answered falsely. Specifically, he failed to disclose that he had been hospitalized within the year for an acute esophageal syndrome and had undergone an esophagogastroduodenoscopy and biopsy of the distal esophagus. The insured also failed to reveal that he had consulted a doctor for coughs, chills, sweats, loss of weight and fever of unknown origin.
William Penn, unaware of the insured's medical history, issued the life insurance policy on February 29, 1988. John J. Spilker died on June 9, 1989 from Acquired Immune Deficiency Syndrome.
On August 7, 1989, Nancy Spilker attempted to collect the proceeds under the policy as the named beneficiary. William *482 Penn refused to honor the policy on March 7, 1990, claiming the insured made material misrepresentations about his medical condition. The underlying suit ensued in which the defense of equitable fraud was raised.
The Legislature enacted N.J.S.A. 17B:25-4 in 1971 providing for incontestability clauses in life insurance policies. The section provides that:
There shall be a provision that the policy (exclusive of provisions of the policy or any contract supplemental thereto relating to disability benefits or to additional benefits in event of death by accident or accidental means or in event of dismemberment or loss of sight) shall be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of 2 years from its date of issue. (emphasis added).
Here the insured died before the passage of two years but defendant's claim for rescission was not asserted until more than two years after the inception of the policy.
In denying contestability the motion judge based his decision on the fact that the policy had not been contested within two years from the date of issue. When doing so he relied upon Massachusetts Mut. v. Manzo, 122 N.J. 104, 584 A.2d 190 (1991). In Manzo, an insurance company sought to rescind a life insurance policy for equitable fraud because insured falsely denied having diabetes. Insured was shot to death two months after applying for the insurance. The lower court concluded the false statement constituted equitable fraud and ordered rescission.
The Appellate Division reversed, noting that diabetes did not cause the insured's death or make him uninsurable. The Supreme Court reversed the Appellate Division and held that equitable fraud "should be available as a grounds for post-loss rescission and that within the period of contestability (emphasis added) an insurer may rescind a policy if the insured knowingly misrepresented facts that would have affected the estimate of the risk and the premium charged." Id. at 111, 584 A.2d 190. However, the Manzo policy was contested within two years of inception so the precise question before us here was not in issue. Justice Pollock went on to say:

*483 Through limiting the time period in which insurance companies could contest life insurance contracts, the Legislature balanced the interests of the insurer in rescinding a fraudulently-obtained policy with those of the insured in security of coverage. By its terms, the statute does not limit contestability to the lifetime of the insured. We would contravene the words and policy of the statute if we were to impose such a limitation. A court may not disregard the plain words of a statute merely because they occasionally lead to an unhappy result. Within the period of contestability, an insurer may contest a policy for equitable fraud whether the insured is dead or alive. Consequently, Mass. Mutual, which contested the policy within the two-year statutory period, (emphasis added) may properly rely on equitable fraud as grounds for rescission.
Id. at 112-113, 584 A.2d 190.
The Manzo court recognized that contestability could survive the lifetime of an insured. However, it did not rule that contestability would not survive the two year period if the insured died before that milepost was reached. The trial judge's reliance upon Manzo to avoid the otherwise plain language of the statute was misplaced.
A review of court decisions applying the incontestability clause is appropriate. In Lance v. Prudential Ins. Co. of America, 19 N.J. Misc. 551, 22 A.2d 3 (C.P. 1941), an insurance company contested a policy that stated it would be incontestable after it had been in force, during the lifetime of the insured, for one year from its date of issue, except for nonpayment of premiums.[1] The insured died within the year. In rejecting the insured's argument that a policy could not be overturned after one year despite the qualifying "during the lifetime of the insured" language, Judge Holland noted:
The incontestability clause in those policies fixes the limitation of contestability as one year from the date of issue during the lifetime of the insured. This language has a normal and purposeful meaning; under this wording, the insured must live for at least one year after the policy is issued before it can mature into incontestability; if the insured dies before the end of that year has been reached, the policy remains contestable and never becomes incontestable against a valid defense. (emphasis added) This type of clause (limited to a period during the lifetime of the insured) has an entirely different *484 significance from that earlier type of incontestability clause in which the limitation of contestability is fixed by a definite period of time from the date of issue of the policy but without the requirement that such period of time must elapse during the lifetime of the insured....
Id. at 553, 22 A.2d 3.
Interpretation of the clause did not change after N.J.S.A. 17B:25-4 was enacted. In Downs v. Prudential Ins. Co. of America, 130 N.J. Super. 558, 328 A.2d 20 (Law Div. 1974), plaintiff beneficiary sought life insurance policy proceeds on insured who died before the policy had been in effect two years. The insurance company filed a counterclaim for rescission more than two years after the issuance of the policy. The court noted:
Giving the words "in force during the lifetime of the insured," as used in the statute, or the words "in force prior to the contest for a period of two years during such member's lifetime," as used in the insurance contract, their ordinary meaning, the court finds that there is a requirement that the insured survive the specified period of time, namely two years if the policy is to become incontestable. Accordingly, since the insured did not survive the two-year period, the policy remained contestable.
Id. at 568, 328 A.2d 20.
Support for this position may be found in 18 Couch Cyclopedia of Insurance Law § 72.44, at 316-317 (1983).
In Formosa v. Equitable Life Assurance Society, 166 N.J. Super. 8, 398 A.2d 1301 (App.Div. 1979), certif. denied, 81 N.J. 53, 404 A.2d 1153 (1979), a beneficiary sought benefits under her late husband's life insurance policy. The insurance company (Equitable) counterclaimed for rescission of the policy since the insured falsely denied he had diabetes at the time he filled out the application. The insured died before the two year incontestability period was reached. Judge Michels explained:
It is firmly embedded in the jurisprudence of this State that life insurance policies may be rescinded based upon equitable fraud, even after the death of the insured. Equitable Life Assur. Soc. v. New Horizons, Inc., 28 N.J. 307, 312-313 [146 A.2d 466] (1958); Gallagher v. New England Mut. Life Ins. Co. of Boston, 19 N.J. 14, 20 [114 A.2d 857] (1955); Metropolitan Life Ins. Co. v. Tarnowski, 130 N.J. Eq. 1, 3 [20 A.2d 421] (E. & A. 1941); Metropolitan Life Ins. Co. v. Lodzinski, 124 N.J. Eq. 357, 359 [1 A.2d 859] (E. & A. 1938); Russ v. Metropolitan Life Ins. Co., 112 N.J. Super. 265, 274 [270 A.2d 759] (Law Div. 1970). See also, Redler v. New York Life Ins. Co., 437 F.2d 41 (3 Cir.1971); Parker Precision Products Co. v. Metropolitan Life Ins. Co., 407 F.2d 1070, *485 1073 (3 Cir.1969); Garman v. Metropolitan Life Ins. Co. 175 F.2d 24, 26 (3 Cir.1949); Ettelson v. Metropolitan Life Ins. Co., 164 F.2d 660, 663, 664-665 (3 Cir.1947). However, an action for rescission based on equitable fraud must be commenced prior to the incontestability clause in the policy taking effect, as mandated by N.J.S.A. 17B:25-4 (L. 1971, c. 144, § 17B:25-4).... Here, the incontestability clause did not operate to bar Equitable's counterclaim for rescission based on equitable fraud because the policy has not "been in force during the lifetime of the insured for two years from the Date of Issue." (Cites omitted).
Id. 166 N.J. Super. at 13, 398 A.2d 1301. While Formosa clearly stated insurance policies remain contestable when the insured does not survive the two year period, that issue was not directly before the court. Equitable filed suit for rescission within two years and so it was not necessary for the court to determine whether relief was available if suit was filed after that time.
Manzo, like Formosa, involved an insurance company that sought rescission after an insured's death but within two years of the policy issue date. Therefore, the Manzo court's language that equitable fraud "should be available ... within the period of contestability" Id. 122 N.J. at 111, 584 A.2d 190, cannot be considered anything more than a holding given the facts of that case. Anything else would directly contravene the plain language of the statute. The statute requires a policy to be in force during the lifetime of the insured for a period of two years from its date of issue before it becomes incontestable. This language requires an insured to survive for two years before the policy becomes incontestable. If the insured dies before the two year period expires, the incontestable clause is never triggered.
Manzo does not excise the "during the lifetime of the insured" language from N.J.S.A. 17B:25-4. If the Legislature had intended the two year limitation to act as an absolute bar to contestability, it would not have added the "during the lifetime of the insured" language. The phraseology is common in the life insurance industry and is used specifically to condition contestability on survival. Such language was recommended by the National Association of Insurance Commissioners to *486 evince the requirement that an insured had to survive a determinable period of time before a policy would be incontestable.[2]
The plain meaning of N.J.S.A. 17B:25-4 requires an insured to survive for two years, while the policy is in force, before the policy becomes incontestable. This reading is supported by case law consistently holding that "during the lifetime of the insured" language requires survival of the statutory period. If an insured dies before the policy has been in force two years, the incontestability clause is a nullity and the insurer is not bound by the two year limitation. The language in Manzo does not compel a different interpretation because the issue was not directly before the court.
Reversed.
NOTES
[1] Pursuant to N.J.S.A. 17:34-15(c); (repealed).
[2] D. Gregg & V. Lucas, Life & Health Insurance Handbook, 113 (3d ed. 1973); G. Salzman, The Incontestable Clause in Life Insurance Policies, Ins. L.J. 142, 144 (1969).